IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge R. Brooke Jackson

Civil Action No. 19-cv-02872-RBJ

DARYL L. KEENER,

      Applicant,

v.

MIKE ROMERO, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant Daryl L. Keener is a prisoner in the custody of the Colorado Department of Corrections.   Mr. Keener has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his conviction in El Paso County District Court Case Number 2011CR835.   On February 28, 2020, Respondents filed an Answer (ECF No. 22) and on March 19, 2020, Mr. Keener filed a Reply (ECF No. 23).

After reviewing the record, including the Application, the Answer, the Reply, and the state court record, the Court concludes Mr. Keener is not entitled to relief on his remaining claims.

I.      **BACKGROUND**

Mr. Keener was convicted by a jury of 34 counts of aggravated robbery for his role in seven bank robberies.   (ECF No. 9-3 at 2).   The following description of the offenses and investigation is taken from the opinion of the Colorado Court of Appeals on direct appeal.

Keener was convicted for his involvement in seven bank robberies in and around Colorado Springs between December 2010 and March 2011. In each of these robberies, a man entered the bank with his face covered and threatened the tellers with a handgun. All but one were aggressive, takeover-style robberies with no customers present. In several of the robberies, the man told the tellers to give him big bills, but no "bait bills" [fn. omitted] or dye packs. Because of these and other commonalities, police investigated the robberies as a pattern.

Based on witness statements and surveillance from the sixth robbery, police suspected that two people were involved -- one as the robber and the other as the getaway driver -- and identified the getaway car as a green Dodge Durango. Hours after the seventh robbery, two detectives investigated a tip about a green Dodge Durango registered to Gary Cyprian, who was ultimately charged as Keener's codefendant. They went to Cyprian's address where they observed a green Durango driven by Cyprian stopped in the street next to a green Mercury Cougar driven by Keener. Police followed and eventually stopped both vehicles.

The officers who stopped Keener conducted a pat-down search and discovered four large bundles of cash totaling $9075 in his pockets, including 19 bait bills from the seventh robbery. Keener and Cyprian were both arrested and charged in connection with the robberies.

In interviews with police, Keener denied involvement in the robberies but described details of three of the robberies and claimed to have information about the other four. While conducting a search pursuant to a warrant of a garage owned by Keener's stepfather and used by both Keener and Cyprian, police found assault rifles and handguns. They also found two bait bills from the sixth robbery in a safe deposit box licensed to Keener. On Keener's cell phone, police discovered internet searches for news stories about bank robberies, links to several of the banks' websites, and MapQuest directions to the banks.

(ECF No. 9-3 at 2-4).   After his conviction Mr. Keener was adjudicated a habitual

2

offender and sentenced to 1256 years imprisonment.   (*Id.* at 4-5).   The Colorado Court

of Appeals affirmed the judgment of conviction on January 28, 2016, and the Colorado

Supreme Court denied certiorari.   (ECF Nos. 9-3, 9-4).   Mr. Keener filed a

postconviction motion under Colo. R. Crim. P. 35(c), which the district court denied.

(ECF No. 9-1 at 30).   The Colorado Court of Appeals affirmed the denial of the

postconviction motion, and the Colorado Supreme Court denied certiorari.   (ECF Nos.

9-6, 9-7).

Mr. Keener's Application presents seven claims.   On January 14, 2020, this

Court entered an order dismissing Claims 3, 4, 6, 7, and the sub-claim of ineffective

assistance of counsel for failure to object to discovery violations set forth in Claim 5, as

procedurally barred.   Thus, the remaining claims in the Application which the Court

addresses herein are:   (1) Claim 1, asserting unconstitutional search and seizure; (2)

Claim 2, asserting ineffective assistance of counsel based on failure to investigate; and

(3) the sub-claim within Claim 5 asserting ineffective assistance of counsel for failure to

request a mistrial as a remedy for a discovery violation.   Additional facts and

procedural history pertinent to the three remaining claims are set forth below.

## II.   STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Keener

liberally because he is not represented by an attorney.   *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However,

the Court should not be an advocate for a *pro se* litigant.   *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Keener bears the burden of proof under § 2254(d).   *See*

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The threshold question the Court must answer under § 2254(d)(1) is whether Mr.

Keener seeks to apply a rule of law that was clearly established by the Supreme Court

at the time his conviction became final.   *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).   Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly

established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).

*See id.* at 1018.

If a clearly established rule of federal law is implicated, then the Court must

determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"   *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable."   *Id.* at 411.   "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law."   *Harrington v. Richter*, 562 U.S. 86, 101 (1991) (internal quotation marks and citation omitted).   A decision is objectively unreasonable

"only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citations omitted).   In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.   In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

6

*Richter*, 562 U.S. at 103.

With respect to factual determinations, section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Keener bears the burden of rebutting the presumption by clear and convincing evidence.   The presumption of correctness applies to factual findings of the trial court as well as state appellate courts.   *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015).   The presumption of correctness also applies to implicit factual findings.   *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 978 (U.S. Feb. 20, 2018).   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If the habeas applicant succeeds in demonstrating that the state court decision is contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented, then the Court must consider the merits of the constitutional claim *de novo*.   *See Harmon v. Sharp*, 936 F.3d 1044, 1056-57 (10th Cir. 2019).

## III.   MERITS OF REMAINING CLAIMS

### A.   Claim 1

In Claim 1, Mr. Keener contends that his Fourth Amendment rights were violated

because the trial court erroneously denied his motion to suppress evidence procured

after the police stopped his car.   The Fourth Amendment protects against

unreasonable search and seizure and is generally enforced through the exclusionary

rule.   *See e.g. Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S.

465, 482-87 (1976).

The Colorado Court of Appeals recounted the facts pertinent to this claim as

follows:

> Two detectives and a police officer involved in the stop
> testified at the suppression hearing.   According to their
> testimony, Detective Thompson and Detective Ledbetter
> were investigating a string of similar bank robberies in
> Colorado Springs in late 2010 and early 2011. On March 8,
> 2011, they responded to the scene of an armed bank
> robbery that had occurred around 10:30 that morning.
> Because the robbery was similar to the other robberies they
> were investigating, they decided to follow up on information
> about a vehicle linked to another robbery that occurred the
> preceding week.
>
> Witnesses to the earlier robbery had observed the robber
> get into the passenger seat of a vehicle, which surveillance
> video showed to be a green Dodge Durango. Based on that
> information, the police suspected that more than one
> person was involved in the string of robberies. A few days
> later, one of the witnesses "saw that vehicle" and provided
> the license plate number to the police. The vehicle was
> registered to Gary Cyprian at a Colorado Springs address.
> Police also received a tip about another green Dodge
> Durango registered to a different address.
>
> Around 1:00 p.m. on March 8, a few hours after that
> morning's bank robbery, the detectives drove to Cyprian's
> address in an unmarked vehicle. They drove by twice, and
> the second time saw a green Dodge Durango with the
> license plate that the witness had provided. The Durango
> was parked in the street alongside a Mercury Cougar that

was stopped facing the same direction. It appeared that the occupants were conversing with each other.

As the detectives pulled up behind them, the vehicles drove off in the same direction. The detectives followed and called for assistance from marked patrol cars. When the vehicles separated, a patrol car followed the Durango and the detectives continued following the Cougar.

The detectives observed that the Cougar had tinted windows that appeared darker than permitted under Colorado law. They could not see inside the vehicle to determine how many people were in it.

The detectives then heard on their radio that the Durango fled when patrol cars tried to pull it over. At that point, they requested assistance in making a "high risk traffic stop" of the Cougar. The Cougar pulled into a parking lot when a patrol car activated its lights, and three patrol cars parked around it. The officers drew their weapons and ordered the driver, Keener, to get out of the car and down on his knees. They handcuffed him and conducted a pat-down search for weapons.

The officer who conducted the pat-down testified that he felt a hard object in Keener's pocket that he thought "could possibly be a small handgun or knife." He pulled out two large bundles of money, which were folded and secured with rubber bands. He continued the pat-down and found two more bundles of money in another pocket. He then stopped the search and placed Keener in the back of a patrol car.

(ECF No. 9-3 at 6-8).   Mr. Keener does not dispute the accuracy of this factual description, which the Court presumes is correct.   *See* 28 U.S.C. § 2254(e)(1).

Respondents argue that Mr. Keener's Fourth Amendment claim must be dismissed because the claim is not cognizable in this habeas corpus action pursuant to the Supreme Court's decision in *Stone v. Powell*.   Under *Stone*, "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494 (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992).   A full and fair opportunity to litigate a Fourth Amendment claim in state court includes the procedural opportunity to litigate the claim as well as a full and fair evidentiary hearing.   *See Miranda*, 967 F.2d at 401.   A full and fair opportunity to litigate also "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards."   *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).   It is Mr. Keener's burden to demonstrate that he was denied a full and fair opportunity to litigate his Fourth Amendment claims in state court.   *See Young v. Conway*, 715 F.3d 79, 92 (2d Cir. 2013) (Raggi, Circuit J., dissenting from denial of reh'g en banc); *Peoples v. Campbell*, 377 F.3d 1208, 1224 (11th Cir. 2004); *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001); *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir. 1993); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (per curiam); *Doleman v. Muncy*, 579 F.2d 1258, 1266 (4th Cir. 1978).

Mr. Keener fails to demonstrate that he was denied a procedural opportunity to litigate his Fourth Amendment claim in state court.   The record before the Court demonstrates that Mr. Keener did have a procedural opportunity to litigate his Fourth Amendment search and seizure claim in state court, and that he took advantage of that opportunity.   In particular, Mr. Keener moved in the trial court to suppress the evidence pertinent to his Fourth Amendment claim, the trial court held an evidentiary hearing on

his motion to suppress, and Mr. Keener raised the Fourth Amendment claim on direct appeal.

Mr. Keener also has not demonstrated that the state courts failed to make a colorable application of the correct Fourth Amendment standards.   Any such argument lacks merit because the record before the Court demonstrates that the state courts thoughtfully considered and applied appropriate Supreme Court precedent.   More specifically, the Colorado Court of Appeals cited and colorably applied relevant constitutional standards in concluding that the stop and arrest did not violate Mr. Keener's Fourth Amendment rights.   (*See* ECF No. 9-3 at 10-2 (citing *People v. Martinez*, 200 P.3d 1053, 1057 (Colo. 2009) (relying on *Illinois v. Gates*, 462 U.S. 213, 238 (1983) and *Alabama v. White*, 496 U.S. 325, 330 (1990)); *People v. King*, 16 P.3d 807, 812 (Colo. 2001) (relying on *Terry v. Ohio*, 392 U.S. 1 (1968)))).   Applying the relevant constitutional standards, the Court of Appeals concluded that the officers had reasonable articulable suspicion to justify an investigatory stop of the Cougar's driver, and that the officers' robust show of force was reasonable under the circumstances and did not transform the stop into an arrest.   (*Id.* at 12-14).

The Court of Appeals further determined that even if there was an insufficient basis to stop Mr. Keener for suspicion of armed bank robbery, the officers had sufficient information to authorize the use of robust force to effectuate the stop for the tinted window violation, without turning that stop into an arrest for bank robbery.   (*Id.* at 15-16).   The court noted that the officers' subjective intentions in stopping Mr. Keener are irrelevant for Fourth Amendment purposes.   (*Id.* at 14 n.3 (citing *People v. Walters*,

249 P.3d 805, 810 (Colo. 2011) (relying on *Whren v. United State*s, 517 U.S. 806, 806 (1996)))).   Finally, the Court of Appeals concluded that the officers' reasonable suspicion became probable cause to arrest Mr. Keener when they discovered the four large bundles of cash in his pockets.   (*Id.* at 16).   Under these circumstances, consideration of Mr. Keener's Fourth Amendment claim in this habeas corpus action is barred by *Stone*.   *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (*Stone* bar applied when the state courts "thoughtfully considered the facts underlying [the] Fourth Amendment claim and rejected the claim on its merits, applying appropriate Supreme Court precedent").

Ultimately, Mr. Keener's argument with respect to Claim 1 is essentially a substantive disagreement with the resolution of the claim by the state courts. However, disagreement with a state court's resolution of a Fourth Amendment claim is not enough to overcome the bar in *Stone*.   *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting petitioner's argument that the state court misapplied Fourth Amendment doctrine in reaching wrong conclusions about probable cause because that was not the proper question under *Stone*); *see also Pickens v. Workman*, 373 F. App'x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for full and fair litigation is not defeated merely because a participant might prefer a different outcome").   Thus, Mr. Keener is not entitled to relief with respect to Claim 1.

### B.   Ineffective Assistance of Counsel Claims

#### 1.   Legal Standard

It was clearly established when Mr. Keener was convicted that a defendant in a

criminal case has a Sixth Amendment right to the effective assistance of counsel.   *See*

*Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, to establish that

counsel was ineffective, Mr. Keener must demonstrate both that counsel's performance

fell below an objective standard of reasonableness and that counsel's deficient

performance resulted in prejudice to his defense.   *See id.* at 687.   If Mr. Keener fails

to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim

must be dismissed.   *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly

deferential."   *Id.* at 689.   "There are countless ways to provide effective assistance in

any given case," and "[e]ven the best criminal defense attorneys would not defend a

particular client in the same way."   *Id.*   Thus, strategic choices made by counsel "after

thorough investigation . . . are virtually unchallengeable."   *Id.* at 690.   There is "a

strong presumption" that counsel's performance falls within the range of "reasonable

professional assistance," *id.* at 689, and it is Mr. Keener's burden to overcome this

presumption by showing that the alleged errors by his counsel were not sound strategy

under the circumstances, *see id.*

In the context of federal habeas corpus review under § 2254(d), a state prisoner

"faces an even greater challenge."   Harmon, 936 F.3d at 1058.   "When assessing a

state prisoner's ineffective-assistance-of-counsel claims on habeas review, we defer to

the state court's determination that counsel's performance was not deficient and,

further, to the attorney's decision in how to best represent a client."   *Id.* (internal

quotation marks and brackets omitted).   Thus, review under § 2254(d) is doubly

deferential.  *See id.*   Furthermore,

> [f]ederal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d)
> applies, the question is not whether counsel's actions were
> reasonable. The question is whether *any* reasonable
> argument exists that counsel satisfied *Strickland's*
> deferential standard. And because the *Strickland* standard is
> a general standard, a state court has . . . more latitude to
> reasonably determine that a defendant has *not* satisfied that
> standard.

*Id.* (citations and internal quotation marks omitted).

Under the prejudice prong, the defendant must establish "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."   *Strickland*, 466 U.S. at 694.   Where the defendant has

not demonstrated that counsel's performance was constitutionally deficient, the court

need not address the prejudice prong of the *Strickland* standard.   *United States v.*

*Soto Hernandez*, 849 F.2d 1325, 1330 (10th Cir. 1988) (citing *Strickland,* 466 U.S. at

697).

### 2.    Claim 2

In Claim 2, Mr. Keener contends that his Sixth Amendment right to effective

assistance of counsel was violated because his counsel failed to investigate

anonymous tips that he allegedly made to law enforcement about the robberies.

The Colorado Court of Appeals applied the *Strickland* test (*see* ECF No. 9-6 at

4-5) and rejected this ineffective assistance of counsel claim because Mr. Keener failed

to demonstrate deficient performance, concluding that "counsel's decision to not

14

pursue the information about the FBI tips was a reasonable strategic decision, and, thus, did not constitute deficient performance." (*Id.* at 7).   The court explained:

> Keener alleges that he provided anonymous tips to the FBI about the bank robberies, but that his counsel failed to investigate the matter despite readily available evidence that would prove that fact. He also argued that had counsel presented that evidence to the jury, there was a reasonable probability that the result of the trial would have been different.
>
> Even accepting as true Keener's factual assertions, the record and the postconviction motion indicate that counsel's decision to not investigate and use this information was a reasonable strategic choice. Specifically, in his motion, Keener stated that his counsel told him he did not pursue the information about the FBI tips because if it was presented to the jury, the jury would be inclined to believe that Keener was involved in the robberies because he had detailed information about them. And further, Keener acknowledged that his counsel believed that if he took the stand to testify about why he made the anonymous tips, the prosecution could use his prior convictions, which included a bank robbery conviction, to impeach him.
>
> Thus, based on the facts alleged in Keener's motion, we agree with the postconviction court that counsel's decision to not pursue the information about the FBI tips was a reasonable strategic decision, and, thus, did not constitute deficient performance. *See Ardolino [v. People]*, 69 P.3d [73] at 76 [Colo. 2003]; see also *People v.* McDowell, 219 P.3d 332, 339 (Colo. App. 2009) ("[D]isagreement as to trial strategy will not support an ineffective assistance of counsel claim.").   Accordingly, the postconviction court did not err in summarily denying the claim.

(ECF No. 9-6 at 6-7).   Having concluded that counsel's performance was not deficient, the court did not proceed to address the prejudice prong of *Strickland*.   *See Strickland,* 466 U.S. at 697.

15

Mr. Keener does not argue that the state court's decision with respect to this ineffective assistance of counsel claim was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Mr. Keener also fails to demonstrate that the state court's decision with respect to this claim is contrary to *Strickland* under the first prong of § 2254(d)(1).   In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.

Finally, Mr. Keener has not demonstrated that the state court's decision with respect to this claim was an unreasonable application of *Strickland* under the second prong of § 2254(d)(1).   Mr. Keener cannot show that trial counsel's decision to decline to pursue information concerning Mr. Keener's reported tips to law enforcement was not the product of a reasonable strategic choice.   *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).   It was not unreasonable for counsel to conclude that information concerning Mr. Keener's anonymous tips might produce damaging evidence tending to show that Mr. Keener was involved in the robberies, and that if Mr. Keener testified about the tips at trial he could be impeached with evidence of his prior convictions, which included bank robbery.   *See e.g. United States v. Roberts*, 417 F. App'x 812, 823 (10th Cir. 2011) (counsel was not deficient when he made an informed, strategic decision that further DNA testing posed more of a risk).

As a result, Mr. Keener fails to demonstrate that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.   The claim fails on that basis.

### 3.   Claim 5 Sub-claim

In the remaining sub-claim within Claim 5, Mr. Keener contends that his trial counsel was ineffective because she failed to request a mistrial when she learned, during trial, about discovery violations by the prosecution.   Respondents argued in their Pre-Answer Response that this claim is procedurally defaulted because Mr. Keener presented the claim in state court for the first time in a postconviction appeal and the Colorado Court of Appeals rejected the claim for that reason.   Mr. Keener does not argue otherwise.   Instead, he contends he can overcome the procedural default based on *Martinez v. Ryan*, 566 U.S. 1 (2012).   The Court deferred consideration of Respondents' affirmative defense.   (*See* ECF No. 16 at 9).

In *Martinez*, the Supreme Court held that if a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding under state law, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.   *Id.* at 16-17.   The Supreme Court subsequently extended the rule in *Martinez* to circumstances in which state law does not require claims of ineffective assistance of trial counsel to be brought in collateral proceedings, but "make[s] it virtually impossible for an ineffective assistance claim to be presented on direct review."   *Trevino v. Thaler*, 569 U.S. 413, 417 (2013).

To meet the narrow exception in *Martinez*, Mr. Keener must establish four

elements concerning the defaulted portion of the ineffective assistance of trial counsel claim:   (1) the claim is substantial; (2) the state postconviction counsel was ineffective or there was no postconviction counsel; (3) the state postconviction proceeding was the initial review proceeding with respect to the ineffective assistance of trial counsel claims; and (4) the claim was required, under state procedural law, to be raised in the state postconviction proceeding or the state's procedural framework makes it highly unlikely that the claim could be raised on direct appeal.   *See id.* at 423, 429.   With respect to the fourth element, the Tenth Circuit has held that *Martinez* applies to Colorado cases based on Colorado's "expressed preference" for defendants to raise ineffective assistance of trial counsel claims in collateral review proceedings.   *Linzy v. Faulk*, 602 F. App'x 701, 702 n.3 (10th Cir. 2015).

Respondents argue that Mr. Keener cannot overcome his procedural default because the claim premised on counsel's failure to request a mistrial is not substantial, under the first *Martinez* element.   In order to satisfy the "substantial" requirement, Mr. Keener must demonstrate that the ineffective assistance of trial counsel claim has "some merit."   *Martinez*, 566 U.S. at 16.

Having reviewed the trial transcript, the Court agrees that the sub-claim of Claim 5 premised on defense counsel's failure to request a mistrial is not substantial under *Martinez*.   The trial transcript reflects the following.   On the first day of trial, during defense counsel's cross-examination of Detective Daniel Thompson, the witness referred to additional police interviews with a potential suspect.   (Record ("Rec."), Transcript ("Tr.") 4/12/2012 at 145).   Defense counsel immediately requested a bench

18

conference, during which she informed the court that she did not have information regarding the additional interviews and stated that "[i]t concerns me that I may not have all the police reports in this case." (*Id.*). Defense counsel stated that "I do think we need to ask for a sanction," but then agreed with the court that "I guess we could keep on going until the regular break because we'll see if there's any other . . . reports and things that I don't have as I do my cross-examination." (*Id.* at 146.). After the jury was excused for the day, defense counsel requested that the court "impose a sanction for the Rule 16 violation" in the form of "the punitive sanction of a dismissal understanding that is an extreme remedy." (*Id.* at 253, 255). Defense counsel added that "[i]f the Court is not willing to give that remedy then we believe that another sufficient remedy would be to . . . . inform the jury of the possible penalties for these charges." (*Id.* at 255). After discussion, the court stated that the matter would be taken up again the following day. (*Id.* at 260).

The next day, the court heard further argument on the issue. (*See* Rec., Tr. 4/13/12 at 4-33). Defense counsel presented a lengthy argument concerning the violation, which she characterized as part of a "systematic problem with the release of discovery" in the case, and on that basis requested "a dismissal or a mistrial" but "at a minimum we're entitled to a recess to be able to do whatever investigation we need to, to be able to ensure that we have all the police reports in discovery in this case." (*Id.* at 8, 11, 12). Within its discussion of possible sanctions, the court stated, "I will tell you, quite frankly, if the defense requests a mistrial it will be granted," but "[t]he potential for a recess is certainly an idea," and "at this point I'm inclined to recess to let

people talk." (*Id.* at 22, 24, 26).   After a half hour recess, defense counsel told the court that "at this time we are asking that the Court take a recess until Tuesday.   We are asking that during that recess we're going to take a look at the reports.   I would note that since I made my record I have received two more reports." (*Id.* at 27).   She requested that the District Attorney's office engage in the necessary procedures to ensure "that we have every single report," and that the parties then reconvene the following week "so we can decide if we need to ask for a mistrial based upon the quantity of information and the type of information that we've received or if it's something that we can continue with," noting that "[w]e realize that we're in the early stages of the trial and so there is a chance that we might be able to deal with some of these issues." (*Id.* at 28).   Defense counsel requested that Detective Thompson, who was scheduled to leave on a vacation, be ordered to stay in town "until at least then and that we be able to through cross-examination, address the reports that haven't been given to us, the information that they contain, and if we need to give, introduce hearsay through him for any witnesses that we're not able to get for the trial." (*Id.*). The court ordered that officer Thompson be made readily available for consultation, and set the matter for further hearing the following week.   (*Id.* at 55-56).

The following week, the day before the trial resumed, the court heard continued argument concerning the discovery violations.   (Rec., Tr. 4/16/12 at 1-23).   Defense counsel began by stating that "[w]e first and foremost are renewing our Motion to Dismiss." (*Id.* at 3).   Alternatively, defense counsel requested as a remedy for the discovery violations:   that the prosecution assure the defense that all discovery had

been provided, that the court allow the defense to call Detective Thompson as a hostile defense witness and allow the defense to introduce hearsay statements through him, and that the defense be allowed to endorse additional witnesses.   (*Id.* at 3-8). Counsel stated that the defense would be submitting its motion to dismiss in writing, but "we are not asking for a mistrial.   I think at this point we have a jury.   We have the period of time that's set aside to go forward with the trial."   (*Id.* at 3, 7).   The Court ultimately approved the curative measures proposed by the defense.   (*Id.* at 9-21).

The next day, the trial court heard argument on the defense's written renewed Motion for Sanction of Dismissal, ultimately denying the motion on the basis that "the curative measures finalized yesterday are sufficient to protect Mr. Keener's rights." (Rec. Tr. 4/17/12 at 9).   Then, because Mr. Keener had waived his presence during the prior day's argument, the court advised Mr. Keener:

> THE COURT:   Mr. Keener, yesterday you had waived your presence when we talked about the curative measures to be taken in this case. A very significant decision in the case was being discussed back on Friday and then I was told the result of that discussion yesterday. Because it's so significant and you weren't here I want to make sure I ask you about it. And that is the attorneys decided at this stage not to make a motion for mistrial. Is that what you want to do?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:   You agree with that decision?
>
> THE DEFENDANT:   Yes, sir.

(*Id.* at 17).

The discussion, argument, and analysis set forth in the trial court transcripts

make evident that defense counsel's decision to decline to seek a renewed motion for a mistrial was not an unreasonable strategic decision.   When the discovery issue first arose, the defense requested a mistrial or, "at a minimum," a recess to be able to investigate to ensure that all discovery had been provided.   The court initially responded that it would likely grant a motion for mistrial, but then proceeded to state that it was actually inclined to order a recess to "let people talk."   At that point it was not at all clear that the trial court would grant a mistrial without counsel first attempting to devise a remedy for the discovery issues.   Further, defense counsel *did* pursue a motion to dismiss the case, which was denied.   Counsel proceeded as the trial court suggested by working to formulate curative measures, which the court ultimately concluded were adequate to protect Mr. Keener's rights.   There is nothing in the record to indicate that, having cured the issues to the court's satisfaction, counsel acted unreasonably in not then renewing the motion for mistrial.   Additionally, Mr. Keener agreed on the record with the decision not to seek a mistrial.

Finally, Mr. Keener has failed to establish prejudice under *Strickland*.   Again, although the trial court initially indicated that it would grant a motion for mistrial if one were submitted, it then expressed its inclination to let counsel talk and, after discussion and consideration, ultimately determined that the proposed curative measures that counsel was able to develop at the court's suggestion were sufficient to protect Mr. Keener's rights.   Mr. Keener has not shown that a renewed motion for mistrial would have been granted so as to establish prejudice under *Strickland.*

As such, Mr. Keener has failed to show that his claim of ineffective assistance of

counsel based on his counsel's failure to seek a mistrial is substantial under *Martinez*. For the same reasons, the claim also would fail on *de novo* review on the merits.

## IV.     CONCLUSION

For the reasons discussed in this order, Mr. Keener is not entitled to relief on his remaining claims.   Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice.   It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED August 19, 2020.

BY THE COURT:

R. BROOKE JACKSON
United States District Judge